UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACOB RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-01109-SEB-MJD |
| | ) |
| LUKAS NIBARGER, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Dkt. 49]. Plaintiff Jacob Rice, a prisoner proceeding *pro se*, has brought this action pursuant to 42 U.S.C. § 1983 against Defendant Lukas Nibarger, a Sergeant with the Columbus Police Department ("Sgt. Nibarger"), alleging that Sgt. Nibarger used excessive force against him in violation of his rights protected by the Fourth Amendment to the United States Constitution. For the reasons detailed below, we GRANT Defendant's Motion for Summary Judgment.

**Factual Background**

In the early morning hours of June 27, 2021, while it was still dark outside, a homeowner called 911 to report that he was out of town and his surveillance camera had picked up an image of an unknown individual in the backyard of his home in Columbus, Indiana. Sgt. Nibarger was dispatched to the area and found a man later identified as Mr. Rice in the driveway of the residence. Dkt. 51-1 ¶¶ 4–6.

Upon observing Mr. Rice, Sgt. Nibarger turned on his flashlight and announced his presence. *Id.* ¶ 9. Mr. Rice immediately fled from Sgt. Nibarger in the direction of the backyard and Sgt. Nibarger observed that he was carrying a black object. *Id.* Sgt. Nibarger drew his firearm and shouted at Mr. Rice to raise his hands as he pursued Mr. Rice on foot. Mr. Rice continued to run toward the back corner of the backyard, at which point Sgt. Nibarger temporarily lost sight of him. *Id.* ¶ 10. As Sgt. Nibarger entered the backyard, he scanned the area using his flashlight and the light attached to his firearm. Sgt. Nibarger testified by affidavit that, although he could not see Mr. Rice's exact body position or his hands due to the darkness, he saw Mr. Rice reach around his body and point what looked to be a firearm in Sgt. Nibarger's direction. *Id.* ¶ 13. Sgt. Nibarger then heard a gunshot that he believed to have originated from Mr. Rice's location. *Id.* ¶ 14. Without first issuing a verbal warning or a warning shot, Sgt. Nibarger immediately discharged his firearm four times in quick succession in Mr. Rice's direction, striking him once. *Id.* ¶ 15. Mr. Rice then began groaning and yelling that he had been shot. After Sgt. Nibarger secured Mr. Rice, he rendered first aid until he was relieved by other officers and medical professionals arriving on the scene. *Id.* ¶¶ 19–22.

Mr. Rice does not deny that his firearm "went off" while he was running or attempting to climb over a fence in the backyard but contends that it was an accidental discharge after which he immediately put his hands in the air "so there would be no confusion as to [his] intentions." Dkt. 57 at 2. The incident was captured by Sgt. Nibarger's body camera, but the video is dark during the period when shots were fired such that it is not discernable from the video whether Mr. Rice had his hands in the air at

the time Sgt. Nibarger shot. The video footage does establish, however, that a single gunshot preceded Sgt. Nibarger discharging his weapon and that the elapsed time from the moment Sgt. Nibarger first shined his flashlight on Mr. Rice until the last gunshot was fired was approximately 12 to 14 seconds. Dkt. 52 at 00:01:39–00:01:52.

On May 27, 2022, Mr. Rice, proceeding *pro se*, filed the instant lawsuit alleging that Sgt. Nibarger's use of force was excessive and thus constituted an unreasonable seizure in violation of the Fourth Amendment. Now before the Court is Sgt. Nibarger's motion for summary judgment, which motion is fully briefed and ripe for ruling.

## Legal Analysis

### I. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. Discussion

Sgt. Nibarger has moved for summary judgment in his favor on Mr. Rice's Fourth Amendment excessive force claim on the grounds that his use of force was objectively

reasonable, and he is entitled to qualified immunity. Because we find for the reasons detailed below that Sgt. Nibarger's use of force did not violate Mr. Rice's constitutional rights, Mr. Rice's Fourth Amendment claim cannot survive.

The Fourth Amendment guarantees citizens the right "to be secure in their persons … against unreasonable … seizures" of the person. U.S. Const. Am. IV. This includes the right to be free from an unreasonable seizure conducted through the use of excessive force. Whether the force employed by an officer in effecting a seizure is constitutionally excessive depends on its "objective reasonableness," which is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and is considered in light of the specific facts and circumstances of that particular case. *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989) (citations omitted). Factors influencing the reasonableness of the force include but are not limited to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.* at 396.

In analyzing a police officer's use of force, the Court must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Weinmann v. McClone*, 787 F.3d 444, 448–49 (7th Cir. 2015) (quotation marks and citation omitted); *see also Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009) ("[T]he police are entitled to err on the side of caution when faced with an uncertain or threatening situation."). "This is true even when, judged with the benefit of

hindsight, the officer[] may have may have made some mistakes." *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020) (internal quotation marks and citation omitted).

In circumstances involving the use of deadly force, such as those presented here, the Court must focus on "the danger posed by the person to whom the force was applied." *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 699 (7th Cir. 2020). In such cases, "the totality of the circumstances to justify a seizure includes the period just before and during the shooting." *Smith v. Finkley*, 10 F.4th 725, 739 (7th Cir. 2021) (citation omitted). The Court must assess "whether a reasonable officer in the circumstances would have probable cause to belief that the suspect poses an immediate threat to the safety of the officers or others." *Molitor*, 968 F.3d at 699 (quoting *Sanzone v. Gray*, 884 F.3d 736, 740 (7th Cir. 2018)). The Seventh Circuit has warned that an individual "does not pose 'an immediate threat of serious harm' solely because he is armed." *Molitor*, 968 F.3d at 700. However, "if the person of interest threatens the officer with a weapon, deadly force may be used, because the risk of serious physical harm to the officer has been shown," even in cases where "a less deadly alternative is available to the officers." *King*, 954 F.3d at 985 (citation omitted).

In excessive force cases, "[t]he obligation to consider the totality of the circumstances … often makes resort to summary judgment inappropriate." *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020). If, however, "a careful examination of the evidence leaves material facts undisputed, or leads to only one rational conclusion, then the question of reasonableness becomes a pure question of law for the court." *Logan*

5

*v. City of South Bend*, 564 F. Supp. 3d 719, 729 (N.D. Ind. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007); *Siler*, 957 F.3d at 759). "[I]f there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, then the court must resolve the issue as a matter of law, rather than allow a jury to 'second-guess' the officer's actions." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

Addressing Mr. Rice's excessive force claim against Sgt. Nibarger in this light, we conclude that under the totality of the circumstances presented here a jury could find only that Sgt. Nibarger's use of deadly force was reasonable; thus, Sgt. Nibarger did not violate Mr. Rice's Fourth Amendment rights. The undisputed facts establish that when he encountered Mr. Rice, Sgt. Nibarger was responding to a 911 call reporting the presence of an unknown man on the property of a residence. It was dark, the location was unfamiliar to Sgt. Nibarger, and he responded alone. The video footage from Sgt. Nibarger's body camera establishes that, immediately after Sgt. Nibarger announced his presence, Mr. Rice fled toward a dark corner of the backyard. Mr. Rice does not deny that, as he was fleeing, a firearm in his possession "went off," which gunshot can be heard on the body camera footage. Immediately following that gunshot, Sgt. Nibarger discharged his weapon four times in quick succession, one round of which struck Mr. Rice. No further shots were fired after Mr. Rice is heard on the video groaning and yelling that he had been shot. The entire incident—from the moment Sgt. Nibarger announced his presence to the final gunshot being fired—lasted approximately 12 to 14 seconds.

Viewing the facts in the light most favorable to Mr. Rice as we are required to do on summary judgment, we assume that Sgt. Nibarger only heard a gunshot from the direction Mr. Rice fled but did not see who fired the shot. Even so, we still have no trouble concluding that under these circumstances a reasonable officer in Sgt. Nibarger's position would have believed that it was the fleeing suspect who had fired, particularly given that there were no other individuals known to be in the area and Sgt. Nibarger had previously observed Mr. Rice carrying what appeared to be a black object as he fled. Moreover, it was reasonable for Sgt. Nibarger to perceive the gunshot as a warning or a threat, particularly given that Mr. Rice was actively attempting to evade capture at the time and had previously ignored the officer's commands to stop and raise his hands. *See Reynolds v. Shelton*, No. 24-1363, 2024 WL 4524123, at *2–*3 (7th Cir. Oct. 18, 2024) (affirming summary judgment in favor of law enforcement officers after the officers shot and killed a suspect who did not comply with commands and reached into her waistband for a gun, but neither pointed the gun at the officers nor verbally threatened to shoot). Under these circumstances, a reasonable officer in Sgt. Nibarger's position would have probable cause to believe that Mr. Rice posed an immediate and serious threat to his safety, and it was therefore not unreasonable for Sgt. Nibarger to use deadly force in this situation.

Mr. Rice's arguments to the contrary are unavailing. He contends that the firearm in his possession went off accidentally and that he immediately raised his hands after the weapon discharged "so there would be no confusion as to [his] intentions," (Pl.'s Resp. at 2), such that Sgt. Nibarger could not have reasonably believed he was under imminent

7

threat at the time he returned fire. Even if Mr. Rice did not intentionally discharge the firearm and he was in the process of raising his hands at the time Sgt. Nibarger returned fire, it does not change the result here. Mr. Rice's subjective intentions do not matter so long as a "jury would still have to conclude that the officer[] acted reasonably based on what [he] could objectively observe." *Reynolds*, 2024 WL 4524123, at *3. Sgt. Nibarger obviously could not discern what was in Mr. Rice's mind at the time the firearm discharged and thus could only react to the exigent circumstances facing him. Given the speed with which the entire incident unfolded and the totality of the circumstances, including that it was dark, Sgt. Nibarger was in a location unfamiliar to him with no backup, and Mr. Rice was admittedly hidden from view, armed, and not yet subdued, a jury would have to find that a reasonable officer in Sgt. Nibarger's position could have easily believed there was no time or opportunity to investigate whether the firearm had accidentally discharged or whether Mr. Rice was attempting to surrender before returning fire to defend himself. *See id.* ("For the use of significant force after an apparent surrender to be unreasonable, the suspect must be subdued and the police must establish that the suspect is unarmed."); *see also Johnson*, 576 F.3d at 659 ("[T]he police are entitled to err on the side of caution when faced with an uncertain or threatening situation.").

     Nor is there merit to Mr. Rice's claim that Sgt. Nibarger should have first issued a verbal warning or warning shot before employing deadly force. Under well-settled law, a police officer should give "some warning" prior to the use of deadly force, but only "where feasible." *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (quoting

8

*Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)). No reasonable jury could find that it would have been feasible for Sgt. Nibarger to warn Mr. Rice that deadly force was going to be used against him in the circumstances presented here because there are no facts to support a reasonable inference that Sgt. Nibarger would have known that such force would be necessary prior to the firearm in Mr. Rice's possession discharging, and any argument that Sgt. Nibarger should have issued a warning at that point, "ignores the great bodily harm and threat of death [Sgt. Nibarber] faced in that moment." *Delgado v. City of Chi.*, No. 18-cv-6378, 2024 WL 5145602, at *7 (N.D. Ill. Dec. 17, 2024) (citing *Horton*, 883 F.3d at 952) (affirming award of summary judgment in officers' favor on the plaintiff's excessive force claim where no verbal warnings or commands were given prior to the use of deadly force). Given the dangerous circumstances presented here and the speed at which the events unfolded, no jury could conclude that it was feasible for Sgt. Nibarger to have warned Mr. Rice before returning fire to defend himself.

    Finally, Mr. Rice devotes much of his briefing to arguing that the Columbus Police Department's post-shooting investigation was biased against him because of his criminal history and his prior interactions with the Columbus Police Chief and Assistant Chief. However, Mr. Rice has not alleged any claim against the Columbus Police Department related to the post-shooting investigation; rather, Mr. Rice's Fourth Amendment excessive force claim against Sgt. Nibarger is the sole claim at issue in this litigation. Any evidence that individuals other than Sgt. Nibarger may have exhibited bias against Mr. Rice in actions taken after the shooting is not relevant to the only question before the Court: whether Sgt. Nibarger's use of deadly force was reasonable

9

under the totality of the circumstances known to him at the time of the shooting. Because, for the reasons detailed above, we hold that a jury could find only that Sgt. Nibarger's use of force was reasonable and therefore permissible under the Fourth Amendment, he is entitled to summary judgment on Mr. Rice's excessive force claim.

### III.   Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment [Dkt. 49] is <u>GRANTED</u>.  Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date:   1/7/2025

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JACOB RICE
988930
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

James Alex Emerson
COOTS HENKE & WHEELER, P.C.
aemerson@chwlaw.com

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com